UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers Local 4-5025,

                                        Plaintiff,

    v.                                                  **DECISION AND ORDER**
                                                                 07-CV-122S

E.I. DuPont DeNemours & Company,

                                        Defendant.
_____

## I. INTRODUCTION

This case involves a labor dispute between the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local 4-5025 ("the Union") and E.I. DuPont DeNemours & Company ("DuPont") over a Grievance filed by the Union. The issue presently before this Court is whether the Grievance is subject to arbitration under the Collective Bargaining Agreement ("CBA"). Both Parties have filed cross-motions on this issue, which are resolved in this Decision and Order. For the following reasons, this Court finds that the Grievance should be submitted to arbitration.

## II. BACKGROUND

**A.    Facts**

DuPont, the Defendant, operates a manufacturing facility in Niagara Falls, NY. (DuPont's Memorandum of Law in Support of Summary Judgment, ("DuPont Mem."), Docket No. 32, pp. 8-9). The Union, the Plaintiff in this case, is the collective bargaining representative for the 165 production and maintenance employees at DuPont's Niagara Falls facility. (DuPont Mem., p. 9).

DuPont and the Union are parties to a Collective Bargaining Agreement ("CBA") which governs their employment relationship. (Exhibit A to the Complaint, Docket No. 1 ("CBA")). The CBA contains an arbitration provision which states the following:

> Any question as to the interpretation of this Agreement, or as to any alleged violation of this Agreement, which is not otherwise settled to the mutual satisfaction of the parties hereto, at the request of either party, shall be submitted to arbitration.

(CBA, Art. X, § 1).

The CBA also contains a section relating to employee benefit plans entitled "Industrial Relations Plans and Practices." (CBA, Art. XI). This section provides that:

> All existing privileges heretofore enjoyed by the employees at the said Plant in accordance with the following Industrial Relations Plans and Practices of the COMPANY shall continue subject to such rules and regulations as existed prior to the signing of this Agreement and to such modifications thereof as may be hereafter adopted generally by the COMPANY to govern such privileges, provided, however, that **as long as any of these COMPANY Plans and Practices is in effect within the COMPANY, it shall not be withdrawn from the employees covered by this Agreement.** Any change in the Industrial Relations Plans and Practices, except for the BeneFlex Flexible Benefits Plan, which has the effect of reducing or terminating benefits will not be made effective until twelve (12) months' notice is give to the UNION by the COMPANY of that change. Changes to the BeneFlex Flexible Benefits Plan, including changes that have the effect of reducing or terminating benefits, may be made to the BeneFlex Flexible Benefits Plan in accordance with the terms and conditions of said Plan.

(CBA, Art. XI, § 1 (emphasis added)). The CBA lists several benefit plans that are provided to Union employees, these are:

- BeneFlex Flexible Benefits Plan
- Career Transition Financial Assistance Plan

2

- Short-Term Disability Plan
- **Pension and Retirement Plan**
- Special Benefits Plan
- Vacation Plan
- Service Emblem Plan
- Continuity of Service Plan
- Payment to Employees on State and National Guard Emergency Duty
- Payment to Employees on Jury Duty
- Savings and Investment Plan
- Total and Permanent Disability Income Plan

(CBA, Art. XI, § 1 (emphasis added)).

On August 28, 2006, DuPont Senior Vice President Jim Borel issued an announcement via e-mail, which the Union contends violated the terms of the CBA, and which DuPont contends modified the terms of the individual benefit plans. (Exhibit B to the Complaint, Docket No. 1 ("DuPont Announcement")). The e-mail announced various benefit changes for new and existing employees. For instance, the e-mail stated that:

> For employees hired beginning January 1, 2007, the redesigned SIP plan [Savings and Investment Plan] will be the sole vehicle for their retirement security. **They will not be eligible to participate in the Pension and Retirement Plan** and they will not receive a company subsidy for retiree healthcare (medical and dental) and retiree life insurance. Their maximum annual vacation benefit will be five weeks and they will be eligible to purchase vacation only during the first ten years of employment with DuPont.

(DuPont Announcement, Docket No. 1 (emphasis added)).

On September 6, 2006, the Union filed a grievance arguing that the announced changes violated the terms of the CBA. (Exhibit C to the Complaint, Docket No. 1, ("Grievance")). The Union specifically claimed (1) that the announced changes were not permissible "modifications" of benefit plans within the meaning of Article XI of the CBA; (2) that the "withdrawal" of these plans for new employees violated Article XI of the CBA; and

(3) that DuPont had failed to give the Union 12 months notice of the reduction and termination in certain benefits as required by the CBA. (Grievance, Docket No. 1).

DuPont responded by letter on January 26, 2007, and stated that it was refusing to submit the Grievance to arbitration. (Exhibit D to the Complaint, Docket No. 1, ("DuPont Letter")). DuPont explained that it viewed the Grievance as a dispute over Union members' eligibility for certain benefits under the terms and conditions of the individual benefit plans, and not a dispute alleging a violation of the CBA. (DuPont Letter, Docket No 1).

**B.   Procedural History**

On March 2, 2007, the Union filed a Complaint seeking to compel arbitration, and alleging that DuPont had breached the CBA. (Docket No. 1). On July 23, 2007, the Union filed a Motion for Judgment on the Pleadings seeking an order compelling arbitration. (Docket No. 27).[1] The Union later moved to amend this Motion, specifically as to the relief requested, and stated that in addition to an order compelling arbitration the Union was seeking declaratory judgment that DuPont had violated the CBA, and an award of attorneys' fees and costs. (Docket No. 34).

On July 23, 2007, DuPont filed a Motion for Summary Judgment seeking dismissal of Plaintiff's Complaint. (Docket No. 28).[2] In support of this Motion, DuPont filed an Affirmation by Mary Jo Anderson (Docket No. 30), which the Union alleges is inadmissible

---

[1] In support of its Motion for Judgment on the Pleadings, the Union submitted a Memorandum of Law and the Affidavit of Jennifer L. Hunter, Esq. In response, DuPont submitted a Memorandum of Law and supporting exhibits. In reply, the Union submitted a Memorandum of Law and a supporting exhibit.

[2] In support of its Motion for Summary Judgment, DuPont submitted the Affirmation of Jennifer G. Knight, the Affirmation of Mary Jo Anderson, a Statement of Facts, a Memorandum of Law, and supporting exhibits. In response, the Union submitted a Memorandum of Law and a Statement of Facts. In reply, DuPont submitted a Memorandum of Law.

and has moved to strike. (Docket No. 39).[3]

After briefing on the Parties' cross-motions was complete, the Union filed a Motion for Leave to File Supplemental Authority, asking that this Court consider a recently published decision of the District Court for the Eastern District of Virginia: E.I. DuPont de Nemours and Co. v. Ampthill Rayon Workers, Inc., No. 3:07CV52-HEH, ___F.Supp.2d ___, 2007 WL 2812902 (E.D.Va. Sept. 24, 2007). (Docket No. 47).[4] The Ampthill Decision reviewed DuPont's 2006 changes to employee benefits, and held that a grievance filed by the Rayon Workers Union challenging these changes should be submitted to arbitration. Ampthill, 2007 WL 2812902, at *8.

### III. DISCUSSION

**A.   Judgment on the Pleadings Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). On a Motion for Judgment on the Pleadings, the Court must draw all inferences in favor of the non-moving party. Id.

---

[3] In support of its Motion to Strike, the Union submitted the Declaration of James Briggs. DuPont submitted a Response in Opposition, and the Union filed a Reply in Support.

[4] In support of its Motion for Leave to File Supplemental Authority, the Union submitted a Memorandum and a supporting exhibit. DuPont filed a Response in Opposition and a supporting exhibit.

**B.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Id.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**C.      The Union's Motion for Judgment on the Pleadings**

The Union has moved for judgment on the pleadings, requesting in part that this Court compel DuPont to submit their Grievance to arbitration. (Docket No. 27). The Union contends that the Grievance alleges a violation of the CBA; that resolving the Grievance will involve interpretation of the CBA; and that the Grievance is therefore subject to arbitration under Article X of the CBA. (Union's Mem. Supporting Judgment on the Pleadings, Docket No. 27, pp. 3-14). DuPont responds that this is not a dispute involving the CBA, but rather, a dispute over the terms, conditions, eligibility, and interpretation of the individual employee benefit plans provided for in the CBA. (DuPont's Mem. Opposing Judgment on the Pleadings, Docket No. 37, pp. 9-10).

The Supreme Court has long held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed ... to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). "[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

In labor disputes such as this, the United States Supreme Court has recognized a presumption in favor of arbitrability:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless

> it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. ***Doubts should be resolved in favor of coverage***." Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder...." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

AT&T, 475 U.S. at 650 (quoting Warrior & Gulf Nav., 363 U.S. at 582-85) (emphasis added).

Like the arbitration provision discussed by the Supreme Court in AT&T, the arbitration provision in the CBA here extends to "[a]ny question as to the *interpretation* of [the CBA]" (CBA, Art. X, § 1 (emphasis added)), and may therefore be characterized as a broad arbitration provision. AT&T, 475 U.S. at 650. Accordingly, to overcome the presumption in favor of arbitration, there must be "forceful evidence of a purpose to exclude the claim from arbitration." AT&T, 475 U.S. at 650.

The Union contends that there is a fundamental disagreement between the parties as to whether Article XI of the CBA permits DuPont to unilaterally withdraw certain employee benefit plans. (Union Reply Mem., Docket No. 40, pp. 2-3). DuPont argues that this is not a dispute about the CBA, but rather, a dispute over the terms, conditions, eligibility, and interpretation of the individual employee benefit plans. (DuPont Response Mem., Docket No. 37, pp. 9-10). Here, the Court agrees with the Union that this dispute is a matter subject to arbitration under the CBA.

Article XI of the CBA provides that "[a]ll existing privileges heretofore enjoyed by the

employees at the said Plant in accordance with the following Industrial Relations Plans and Practices of [DuPont] shall continue subject to . . . modifications thereof as may be hereafter adopted generally by [DuPont] to govern such privileges." (CBA Article XI, (emphasis added)). Article XI further provides that "as long as any of these [individual benefit plans] is in effect within [DuPont], it *shall not be withdrawn* from the employees covered by this Agreement." (CBA Article XI, (emphasis added)).

The Union contends that the changes outlined in the 2006 Announcement impermissibly *modified* and effectively *withdrew* certain employee benefits provided for in the CBA. (Union's Mem. Supporting Judgment on the Pleadings, Docket No. 27, pp. 3-14). DuPont responds that the 2006 Announcement modified the terms and conditions of the *individual employee benefit plans*, and did not impermissibly modify or withdraw any benefits under the CBA. (DuPont's Mem. Opposing Judgment on the Pleadings, Docket No. 37, pp. 9-22).

This determination—whether the 2006 Announcement constituted an impermissible modification or withdrawal of benefits—goes directly to the merits of the Union's Grievance, and the question of whether DuPont in fact violated the CBA. Furthermore, the resolution of this question will require an interpretation of the CBA, specifically Article XI and the provisions governing the modification and withdrawal of employee benefits. The CBA states that "[a]ny question as to the *interpretation* of this Agreement, or as to *any alleged violation* of this Agreement . . . *shall be* submitted to arbitration." (CBA, Art. X, § 1 (emphasis added)). Because the Union's Grievance alleges a violation of the CBA, and because resolving this alleged violation will require an interpretation of the CBA, this Court

finds that the matter should be submitted to arbitration under Article X of the CBA.

Note that the Court is not determining here whether the 2006 Announcement *did in fact* impermissibly modify or withdraw employee benefits. Such a holding would effectively determine on the merits whether DuPont violated the CBA as the Union has alleged in its Grievance. Litigating the merits of a plaintiff's grievance on a motion to compel arbitration would undermine the arbitration process and negate any benefits to resolving a dispute through arbitration. Rather, the Court is finding that the allegations contained in the Union's Grievance fall within the scope of the CBA arbitration provision, particularly where there is a presumption in favor of arbitration on public policy grounds.

Accordingly, the Union's Motion for Judgment on the Pleadings (Docket No. 27) is granted in part and denied in part. The Union's Motion is granted in part, in that the Court finds that the Grievance should be submitted to arbitration (with the exception of claims relating to the Medcap Plan and the Dental Plan which the Union has withdrawn). (Union Reply Mem., Docket No. 40, p. 2, n. 1). The Union's Motion is denied in part, in that the Court declines to find whether DuPont has breached the CBA, and declines to award costs and attorneys' fees. Lastly, the Union's Motion to Amend (Docket No. 34) is granted, in that the Court has *considered* the Union's revised request for relief.

**D.     DuPont's Motion for Summary Judgment**

DuPont contends in its Motion for Summary Judgment that the claims in the Union's Grievance are not subject to arbitration. (Docket No. 28). For the reasons stated above, DuPont's Motion for Summary Judgement is denied. Because the Union's Grievance alleges a violation of the CBA, and because resolving this alleged violation will require an

interpretation of the CBA, this Court finds that the Grievance is subject to arbitration under Article X of the CBA.

**E.    Remaining Motions**

After DuPont moved for Summary Judgment, the Union moved to strike the Affirmation of Mary Jo Anderson in support of DuPont's Motion for Summary Judgment (Docket No. 39). DuPont's Motion for Summary Judgment having been denied, the Union's Motion to Strike is denied as moot.

Additionally, the Union filed a Motion for Leave to File Supplemental Authority, asking that this Court consider a recently published decision of the District Court for the Eastern District of Virginia: E.I. DuPont de Nemours and Co. v. Ampthill Rayon Workers, Inc., No. 3:07CV52-HEH, ___F.Supp.2d ___, 2007 WL 2812902 (E.D.Va. Sept. 24, 2007). (Docket No. 47). The Union's Motion is granted, in that the Court has considered—but has not exclusively relied on—the Ampthill Decision.

## IV. CONCLUSION

For the foregoing reasons, the Union's Motion for Judgment on the Pleadings is granted in part and denied in part; DuPont's Motion for Summary Judgment is denied; the Union's Motion to Amend is granted; the Union's Motion to Strike is denied as moot; and the Union's Motion for Leave to File Supplemental Authority is granted.

Because the Union's Grievance alleges a violation of the CBA, and because resolving this alleged violation will require an interpretation of the CBA, this Court finds that

the Grievance is subject to arbitration under Article X of the CBA.

## V. ORDERS

IT HEREBY IS ORDERED, that the Union's Motion for Judgment on the Pleadings (Docket No. 27) is GRANTED in part and DENIED in part, consistent with the foregoing Decision and Order.

FURTHER, that DuPont's Motion for Summary Judgment (Docket No. 28) is DENIED.

FURTHER, that the Union's Motion to Amend (Docket No. 34) is GRANTED, in that the Court has *considered* the revised request for relief.

FURTHER, that the Union's Motion to Strike (Docket No. 39) is DENIED as moot.

FURTHER, that the Union's Motion for Leave to File Supplemental Authority (Docket No. 47) is GRANTED, in that the Court has *considered* the supplemental authority.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

Dated:   March 17, 2008
         Buffalo, New York

                                                 /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                 United States District Judge